## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CREATIVE MANAGEMENT SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-1864 C |
| | ) | (Judge Lydia K. Griggsby) |
| v. | ) | |
| | ) | |
| The UNITED STATES OF AMERICA | ) | |

### MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Government's motion to dismiss is based exclusively on the issue of the timeliness of MC-2's complaint.[1]  The "Argument" section of the motion merely asserts that a November 10, 2015, letter from the contracting officer was a final decision on the issue of funds allegedly due to GSA, without any real analysis or explanation.  Doc. No. 11 at 8-11.  This letter was not a final decision because it did not state the amount allegedly claimed by the Government as a "sum certain."  The Government did not claim a sum certain against MC-2 until the contracting officer sent her letter of January 31, 2018; and MC-2 filed its complaint in this case within the applicable one-year period from that date.

### ARGUMENT

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court "must assume that all undisputed facts alleged in the complaint are true, and must draw all reasonable inferences in the plaintiff's favor." *Brown v. United States*, 142 Fed. Cl. 275, 278, (Fed. Cl. 2019) (denying motion to dismiss for lack of subject matter jurisdiction) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by*

---

[1] The "Statement of Facts" section of the motion presents a one-sided interpretation of the underlying contractual issue and completely ignores the detailed analysis in the complaint demonstrating that the contract was changed to a no-cost-to-the-government format before the contract years in dispute. *Compare* Doc. No. 11 at 2-4 *with* Doc. No. 1 ¶¶ 8-22.  The interpretation of the contract language, however, is not an issue in the motion to dismiss; and MC-2 will not take up the Court's time arguing the contract interpretation issue prematurely.

*Davis v. Scherer*, 468 U.S. 183 (1984*)*; *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).  Under this standard, MC-2 undoubtedly has pled the timeliness of its suit sufficiently.

FAR 33.211(a) establishes the requirement of a "final decision" by the contracting officer on a "claim" and the 12-month limit from the date of that final decision for filing suit in this Court.  In addition, FAR 33.211(a) refers to "a claim **by or against a contractor**" (emphasis added).  Similarly, the definition of a "Claim" in FAR 2.101 that establishes the requirement for a "sum certain" applies to a written demand or assertion "**by one of the contracting parties**" (emphasis added).  It is clear from this wording that the requirement of a sum certain applies to the Government as well as the contractor.  *E.g.*, *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) (en banc); *Appeal of the Boeing Co,* , ASBCA No. 57490, 12-1 BCA ¶34916 (Jan. 6, 2012).

The amount GSA finally specified as a sum certain in its January 2018 letter is the difference between the amount left in the so-called reserve fund from conference years 2009 through 2011 and the amount of MC-2's claim for the termination for convenience of the 2012 conference before it was held that GSA allowed (*e.g.*, initial marketing costs, legal fees, and liquidated damages paid to the convention center).  Complaint Exhibit 1 at 4-9.  The contracting officer reduced the amount for the termination claim from $717,680.10 to $628,415.37 in her November 2015 letter.  *Id.*  MC-2 accepted that amount by letting 12 months pass without appealing, and there is no dispute regarding the finality of that contracting officer decision.  The issue underlying GSA's motion is the finality of the contracting officer's November 2015 decision regarding the amount of the **Government's claim against MC-2**.

The $1,288,429.05 in this dispute is the amount that MC-2 has been asserting for at least seven years it is entitled to keep as compensation under its no-cost-to-the-government contract, an amount which GSA did not agree was correct until the contracting officer's January 2018 letter.  MC-2 has this money in its possession and need not submit a claim to obtain it.  Thus, GSA is the party which must state a sum certain in this dispute.  GSA now belatedly contends that it stated this amount as a sum certain in the contracting officer's November 2015 letter.  It is clear, however, on the face of the letter and the allegations regarding the letter set forth in the complaint that the contracting officer did not want to agree to a sum certain amount that MC-2 was contending it was entitled to keep and that the Government contended was due to the Government.  The contracting officer deliberately avoided accepting and agreeing to the amount MC-2 said was surplus of receipts over expenses until her letter of January 31, 2018.  MC-2's suit, therefore, was well within the 12-month limit for filing in this Court.

The November 2015 letter mentioned the $1,288,429.05 amount, but only as the amount MC-2 said it was entitled to keep, not as the amount GSA was claiming.  "MC-2, prior to the cancellation of the Conference, had sent the Contracting Officer an email dated July 11, 2012, stating that the surplus at the end of the 2011 GovEnergy Conference was **nearly $1.3 million** - *i.e.*, $1,288,429.05."  Complaint ¶ 27 & Exhibit 1 at 2 (emphasis added).  Toward the end of the letter, GSA stated that "[t]he contract file contains information from MC-2 that reflects the existence of a Reserve Fund in the amount of **approximately $1.2 million**."  Complaint ¶ 26 & Exhibit 1 at 10 (emphasis added).  When the November 2015 letter presented an amount allegedly due as an offset to the termination claim, it was deliberately vague, stating that GSA "believes" the amounts of the MC-2 termination proposal and the amount the contracting officer allowed for that proposal were "significantly less" than the amount of the GSA claim.

Complaint ¶ 28 & Exhibit 1 at 9. The contracting officer was wording the November 2015 letter very carefully to avoid making any admission about the amount MC-2 was claiming.

As is stated above, FAR 2.101 defines a "Claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a **sum certain**" (emphasis added). GSA's purported final decision of November 10, 2015, did not seek a sum certain. It is clear from the case law that vague statements regarding the amount of a Reserve Fund as "nearly $1.3 million" or "approximately $1.2 million" do not satisfy the requirement for a sum certain. Qualifying terms like "nearly" or "approximately," especially when used with a number that is itself imprecise, cannot be a sum certain. *J. P. Donovan Const., Inc. v. Mabus*, 469 F. App'x 903, 907-08 (Fed. Cir. 2012) (contractor's use of "approximately $65,000 of additional direct and administrative costs" meant entire claim not a sum certain);[2] *JEM Transport, Inc. v. United States*, 120 Fed. Cl. 189, 198 (2015) (contractor claim stated "approximately" is not sum certain).

The implicit excuse in the November 2015 letter for not being able to provide a sum certain is the contention that MC-2 had not provided a final accounting. The November 2015 letter stated that the contracting officer's response in a June 22, 2015, "letter" to a February 2015 email was that it "was impossible for GSA to accept MC2's recent statements that there are no remaining reserve funds,[3] and in the alternative that MC2 is entitle [sic] to such monies if they exist, without receiving the required final accounting for 2012 and an explanation of the

---

[2] GSA's motion actually cited this case as support for another argument, that the requirement of a sum certain is satisfied where the amount "can be easily determined by a simple mathematical calculation." Doc. No. 11 at 8-9. This statement, however, was made in the context of distinguishing the use of an approximation in *J.P. Donovan* from a case cited by the contractor in which such a simple mathematical calculation was based on precise amounts and, therefore, could be made. 469 F. App'x at 908.

[3] This statement misrepresents MC-2's position. MC-2 actually said there were no funds in a reserve that were owed to GSA. *E.g.*, Motion Appx at 40 (MC-2, not GSA, entitled to difference between revenue and expenses).

$1,288,429.05 that MC2 stated existed following the 2011 conference." Complaint ¶ 29 & Exhibit 1 at 5.

GSA argues in the motion that its demands "unequivocally set forth the amount that GSA was seeking - **all** of the surplus remaining in the reserve fund - and were therefore 'claims' as defined by the FAR." Doc. No. 11 at 9 (emphasis in original). This is not a sum certain; it is not even a sum. The motion argues further: "And because the accounting was done by MC-2 alone, only MC-2 would be aware of the exact amount in the reserve fund at any given time." *Id.* This argument completely ignores the specific allegations in the complaint that MC-2 did provide an accounting at the end of each year and in total in 2012. Complaint ¶¶ 30-33. In fact, GSA's motion attaches Dennis Church's July 11, 2012, email providing the final accounting for years 2009 through 2011 and the total surplus ($1,288,429.05) as part of the appendix. Def. Appx. 29. The contracting officer argued in her November 2015 letter that the emails submitting amounts for the 2009 through 2011 conferences were not an accounting because they were not on MC-2 letterhead and were not signed. Complaint ¶ 34 & Exhibit 1 at 5. There was no special format for the accounting stated in the contract, but the contract did give GSA audit rights. Doc. No. 11, Def.'s App'x 12, § 2.4.2.[4] If GSA did not trust these figures, it could have audited MC-2's records of the 2009 through 2011 conferences itself. Instead, it did nothing for more than two years but reassert its right to the entire surplus, whatever that amount might be.

Then, apparently realizing that her November 2015 letter contained too many qualifications to constitute a final decision, the contracting officer sent her January 31, 2018, letter, claiming a sum certain of $660,013.65. As the January 2018 letter states, this amount is the exact difference between (1) the amount MC-2 had been providing since 2012 as the amount

---

[4] The GovEnergy Executive Committee granted audit rights in § 2.4.2 is defined in § 1.6 as a committee consisting of representatives of the six sponsoring Government agencies.

of the surplus and (2) the amount the contracting officer allowed for the termination claim in her November 2015 letter.  Complaint Exhibit 2 at 1.  GSA argues in the motion that it "has never indicated that the January 2018 correspondence was a final decision" and that the January 2018 letter "itself refers to the 2015 CO's decision as the 'final decision.'"  Doc. No. 11 at 10.  Calling the November 2015 letter a final decision, however, does not make it one.

## CONCLUSION

GSA's motion to dismiss should be denied on the grounds stated above.  If anything, MC-2 is entitled to summary judgment in its favor on the issue of the finality of the contracting officer's so-called November 2015 "decision" on the issue of MC-2's claim for surplus funds and the timeliness of the filing of MC-2's complaint.

                Respectfully submitted,

                BRYAN CAVE LEIGHTON PAISNER LLP

                By /s/ Charles A. Weiss
                Charles A. Weiss, MO Bar #20299
                cweiss@bclplaw.com
                211 N. Broadway, Suite 3600
                St. Louis, MO 63102
                (314) 259-2000
                (314) 259-2020 (fax)

Of Counsel

Stephen R. Snodgrass, MO Bar #29017
BRYAN CAVE LEIGHTON PAISNER LLP
srsnodgrass@bclplaw.com
211 N. Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259-2020 (fax)

Adam L. Shaw, D.C. Bar #1035046
BRYAN CAVE LEIGHTON PAISNER LLP
adam.shaw@bclplaw.com
1155 F Street, NW
Washington, DC 20004-1357
(202) 508-6000
(202) 508-6200 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July, 2019, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

/s/ Charles A. Weiss
Charles A. Weiss