IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CREATIVE MANAGEMENT SERVICES, LLC,  )<br>)<br>            Plaintiff,    )<br>)<br>       v.    )<br>)<br>THE UNITED STATES,    )<br>)<br>            Defendant.    )<br>_____) | No. 18-1864C<br>(Judge Lydia K. Griggsby) |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Rule 7.2(b)(2) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this reply in support of our motion to dismiss the complaint of plaintiff Creative Management Services, LLC, d/b/a MC$^2$ (MC-2) for lack of subject matter jurisdiction.[1]

## INTRODUCTION

MC-2's opposition confirms that its complaint is simply an untimely appeal of a contracting officer's (CO) final decision, cloaked in a request for declaratory judgment. Pl. Opp. (ECF No. 12). Because MC-2's complaint was filed over two years after expiration of the 12 month time limitation for appeals provided by the CDA, the complaint should be dismissed for lack of subject matter jurisdiction.

---

[1] Defendant's motion contained a typographical error – the General Services Administration (GSA) was inadvertently referenced as the Government Services Administration. ECF No. 11 at 2. The Government regrets the error and apologizes to the Court for any confusion it may have caused.

## ARGUMENT

MC-2 acknowledges that there is "no dispute regarding the finality of [the CO's] decision" with respect to MC-2's termination proposal, but contends that the decision was not final "regarding the amount of the **Government's claim against MC-2**." Pl. Opp. at 2 (emphasis in original). But as demonstrated in our motion to dismiss, the CO's decision applied to both MC-2's termination proposal and GSA's demand for the reserve funds. Indeed, according to the CO, the two are inextricably connected, and therefore the CO denied MC-2's claim specifically because the approved settlement amount was "significantly less" than the monies held by MC-2 in the reserve fund. *See* ECF No. 1-2 at 9.

MC-2 has brought this action, under the guise of seeking declaratory relief, in an effort to pursue the settlement amount while avoiding remittance of the reserve funds, which it acknowledges are in its possession. *Id*. at 3 ("MC-2 has this money in its possession . . . ."). Once again, however, MC-2 misapplies the law to the facts of this case. MC-2 asserts that the CO's final decision was not "a final decision because it did not state . . . a sum certain." Pl. Opp. at 1, 4. But the law does not require a final decision to state a sum certain, rather the law requires a *claim* to state a sum certain. *See* 41 U.S.C. § 7103(a)(2) and (3); 48 C.F.R. § 2.101 (defining "claim" as "a written demand . . . seeking, as a matter of right, the payment of money in a sum certain . . . ."). Here, GSA made two written demands for remittance of the reserve funds before the final decision, each time requesting an "accounting" of the amount in the reserve fund, and return of the "entire," or "all monies," remaining in the reserve fund. Def. App.30; Def. App.35. These demands unequivocally set forth the amount GSA was seeking – *all* of the money in the reserve fund – and were claims as defined by the FAR. The CO's final decision subsequently resolved both GSA's and MC-2's "claims." *See* ECF No. 1-2.

The FAR requires the CO's final decision to include a "description of the claim or dispute," a requirement GSA undoubtedly met. *See* 48 C.F.R. § 33.211. The final decision was specific enough in that it set forth the settlement amount and the amount that GSA believed to be in the reserve fund, relying on an accounting provided by MC-2 prior to the contract termination. *See* ECF No. 1-2 at 3, 9. Accordingly, the amount GSA determined to be owed by MC-2 was never unknown.

MC-2 contends that "vague statements" and "[q]ualifying terms" cannot satisfy the sum certain requirement, relying on *J. P. Donovan Const., Inc. v. Mabus*, 469 F. App'x 903, 907-908 (Fed. Cir. 2012), and *JEM Transport, Inc. v. United States*, 120 Fed. Cl. 189, 197-98 (2015). Pl. Opp. at 4. But MC-2's contentions are unsupported by the cases they cite, which stand for the proposition that a "sum certain" must be ascertainable from a complete reading of a claim. *See J.P. Donovan*, 469 F. App'x at 907-908; *JEM Transport*, 120 Fed. Cl. at 197-98. In *J.P. Donovan*, the Federal Circuit grappled with the question of whether a contractor's claim that was unsupported by documentation or records included a "sum certain." 469 F. App'x at 907-908. The contractor's claim included an add on for "approximately $65,000.00" of miscellaneous costs on top of a subcontractor's submitted claim. *Id.* at 905. The court determined that the claim amount was "unascertainable" because it relied on qualifying language without supporting documentation that would allow "the contracting officer to substantiate the claim." *Id.* at 908. Citing this same proposition, the Court of Federal Claims in *JEM Transport* determined that a contractor's claim for unpaid late slips without supporting documentation was similarly "unascertainable." 120 Fed. Cl. 189, 197-98.

Unlike the claims at issue in *J.P. Donovan* and *JEM Transport*, the amount at issue in GSA's 2015 final decision is clearly ascertainable. The final decision describes the factual

3

background surrounding the amount in controversy, and summarizes GSA's prior demands for an accounting and remittance of the reserve funds. *See* ECF No. 1-2 at 2-5. The CO eventually decided to base his decision on the amount MC-2 acknowledged as the surplus at the end of 2011 – $1,288,429.05 – explaining that MC-2 had refused to provide any additional accountings over the following three years. *Id.* at 2-3 ("MC-2, prior to the cancellation of the [c]onference, had sent the [CO] an email dated July 11, 2012, stating that the surplus at the end of the 2011 GovEnergy [c]onference was nearly $1.3 million – *i.e., $1,288,429.05.*") (emphasis added) ("GSA has relied on MC-2's information that there is over a $1.2 million surplus in the [r]eserve [f]und controlled by MC-2."). The CO also attached the July 11, 2012 email from MC-2 detailing the surplus at the end of the 2011 GovEnergy conference to the final decision. *Id.* at 10; *see also* Def. App.29.

      Contrary to MC-2 assertions that the CO "was deliberately vague" (*see* Pl. Opp. at 3), the CO's use of qualifiers when referring to the amount contained in the reserve fund was simply a reference to the fact that MC-2 refused to provide an accounting despite several requests. The amount in controversy was always and remains ascertainable – the $1,288,429.05 in the reserve fund minus the $628,415.37 due to MC-2. *See* ECF No. 1-2 at 3, 9. In *JEM Transport* and *J.P. Donovan,* the party asserting a claim had access to information required to state a sum certain and failed to provide it. Here, GSA's final decision reflected facts that were available to it in dealing with an uncooperative contractor, and the decision referenced and attached documented support for the amount the CO ultimately determined to base his decision upon. *Id.* at 3, 9 – 10.

The qualifying language used by the CO reflected the fact that MC-2, and MC-2 alone, had access to the actual amount in the reserve fund.[2]  *See* ECF No. 1-2.

Finally, MC-2's assertion that GSA's January 31, 2018 letter was a final decision on the remittance of the reserve funds remains untenable.  As demonstrated in our motion to dismiss, the January 2018 letter specifically refers to the CO's 2015 decision as the "final decision."  *See* ECF No. 1-3 at 1.  And despite MC-2's assertions to the contrary (*see* Pl. Opp. at 6), saying it's so, *inter alia*, does indeed make it so.  *See* 48 C.F.R. § 33.211 ("the contracting officer shall . . . [p]repare a written decision that shall include . . . [language] substantially as follows: 'This is the final decision of the [c]ontracting [o]fficer. . . .'").  The January 2018 letter was an attempt on behalf of GSA to collect a debt owed by MC-2 which became due one year after issuance of the final decision – nothing more and nothing less.

## **CONCLUSION**

Because the plaintiff's appeal of the CO's final decision is untimely, the United States respectfully requests that the Court dismiss plaintiff's complaint.

---

[2]  MC-2 argues that the GSA had "audit rights."  Pl. Opp. at 5.  Notably, however, exercise of those audit rights required cooperation from MC-2 in turning over access to "the bank account and relevant financial records," which MC-2 refused to do.  *See* Def. App.12.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

 s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

 s/Sonia W. Murphy
SONIA W. MURPHY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 305-3067

Of Counsel:
Stephen T. O'Neal
Assistant General Counsel
Office of General Counsel (LP)
General Services Administration

Date: July 26, 2019

Attorneys for Defendant United States

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of July, 2019, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

s/ Sonia W. Murphy
Sonia W. Murphy
